

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MEASUREMENT COMPUTING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL PATENT CORPORATION INTERNATIONAL, and ACTICON TECHNOLOGIES, LLC,<br><br>Defendants. | CIVIL ACTION<br>NO. 03-11047-WGY |

MEMORANDUM AND ORDER

YOUNG, C.J.                                    February 10, 2004

I.   INTRODUCTION

The plaintiff, Measurement Computing Corporation ("Measurement"), brings the present action seeking a declaration of its rights with respect to patents owned by the defendants, General Patent Corporation International ("General Patent") and its wholly owned subsidiary, Acticon Technologies, LLC ("Acticon"). Specifically, Measurement seeks a declaration that the General Patent patents are invalid, unenforceable, and not infringed by Measurement's products. In addition, Measurement asserts that General Patent's enforcement of its patents constitutes a violation of federal antitrust laws. General Patent here moves for dismissal, or in the alternative, for a

more particular statement of Measurement's claims suggesting fraud. [Doc. No. 5].

### A. Facts

Consistent with the standard for evaluating a motion to dismiss and the procedural posture of this case, the Court draws the following facts primarily from Measurement's Complaint, accepting the uncontroverted allegations as true and resolving any factual conflicts in Measurement's favor. See Deprenyl Animal Health, Inc. v. University of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002).

#### 1. The Parties

Measurement, formerly doing business as Computer Boards, is a Massachusetts corporation that manufactures circuit boards used to connect personal computers to external devices. Compl. [Doc. No. 1] ¶¶ 2, 3. The Measurement products at issue here are circuit boards with dimensions and forms that meet the standards of the Personal Computer Memory Card International Association. Id. ¶ 3.

General Patent is a New York corporation engaged in the business of acquiring interests in patents and licensing or litigating those interests on a contingency basis. Id. ¶ 4. Acticon, also a New York corporation, is a wholly owned subsidiary of General Patent. Compl. ¶ 5. Acticon is listed as the current owner of record of the patents presently at issue,

U.S. Patent Nos. 4,603,320, 4,686,506, and 4,972,470 ("the Patents"). Id. ¶ 5-6. Generally, the Patents are directed to "connectors," which provide interfaces between personal computers and external devices. Id. ¶ 7. Among Acticon's licensees are two Massachusetts companies that have licensed technologies claimed by the Patents. See Pl.'s Opp'n at 10-11.

### 2. Correspondence between the Parties

General Patent first contacted Measurement (then Computer Boards) by letter dated May 16, 1997. Pl.'s Opp'n at 3 (citing Letter from Poltorak to Evansen of 5/16/97). In this letter, General Patent asserted that Computer Board's "family of PC Cards (PCMCIA) . . . infringe [General Patent's] above captioned patents." Letter of 5/16/97 at 2. After describing the patent claims and detailing their alleged infringement, General Patent stated that "any continued manufacturing, use, sale or offer for sale [of Measurement's PC cards] can only be done under license from Acticon Technologies, a division of General Patent Corporation International." Id.

Subsequent communications between the parties included letters from General Patent that Measurement viewed as "explicitly threatening to bring a patent infringement lawsuit." Pl.'s Opp'n at 3. In a letter dated July 19, 2002, an attorney in General Patent's litigation department informed Measurement's President that General Patent was "currently involved in

3

litigation against other infringers," and absent an "amicable resolution[,] . . . intend[ed] to enforce its patent rights against your company as one of more of the litigation cases conclude."  Compl. ¶ 8 (citing Letter from Cohen to Evansen of 7/19/02 at 1).

### B. Procedural Posture

Measurement did not wait to be sued.  Instead, availing itself of the proximity and proficiency of the District of Massachusetts, see Julia Huston, Litigating Patent Rights in a Down Economy, Mass. Law. Weekly, Oct. 13, 2003, at B3, B8; John O. Cunningham, The Growing World of Patent Litigation, Mass. Law. Weekly, Dec. 22, 2003, at B1, it struck first, filing the present action on June 2, 2003, seeking, inter alia, a declaration that General Patent's Patents are invalid, unenforceable, and not infringed.  Compl. ¶¶ A-D.  But the fact that General Patent appears to want to sue Measurement and Measurement is ready to fight that suit here does not end the matter.  After all, jockeying for forum is now an essential weapon in the litigation armamentarium.  See Kimberly A. Moore, Forum Shopping in Patent Cases, 79 N.C. L. Rev. 889, 892, 921 (2001) (examining more than 11,000 patent cases terminated by or tried before district courts and concluding: "[W]hen the patent holder selects the forum, the patent holder wins 58% of the claims.  When the accused infringer brings a declaratory judgment action and thereby chooses the

4

forum, the patent holder win rate drops to 44%."); Kevin M. Clermont & Theodore Eisenberg, <u>Exorcising the Evils of Forum Shopping</u>, 80 Cornell L. Rev. 1507, 1508, 1511-1512 (1995) ("In recent federal civil cases [terminated between 1979 and 1991], the plaintiff wins in 58% of the nontransferred cases that go to judgment for one side or the other, but wins in only 29% of such cases in which a transfer occurred.").

General Patent here moves to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim. Defs.' Mem. at 7-19. In the alternative, General Patent seeks a more particular statement of Measurement's claims suggesting fraud. <u>Id.</u> at 19-20. After hearing oral argument on the motion, the Court expressed concern regarding its jurisdiction over General Patent and Acticon, but stayed its decision pending further negotiations and reasonable discovery on the issue of jurisdiction. <u>See</u> Hr'g Tr. at 8, 13-14. As settlement negotiations have now stalled and the parties have not submitted additional evidence regarding jurisdiction, the Court proceeds to decide the motion to dismiss on the basis of the prior submissions.

II. DISCUSSION

As the Court's most serious concerns involve personal jurisdiction, <u>see id.</u> at 11, discussion proceeds accordingly. In this action seeking declaratory relief against an "out-of-state

patentee," Federal Circuit law governs the determination of personal jurisdiction.[1] Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995). The determination involves two inquiries: first, whether the Massachusetts long-arm statute permits service of process and second, whether the assertion of personal jurisdiction would violate due process. Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-76 (1985)).

With regard to the first inquiry, the Court concludes that under the circumstances, General Patent's purposeful communications with Measurement meet the literal requirement of Mass. Gen. Laws ch. 223A § 2(a) that the defendant have "transact[ed] any business in this commonwealth." See Nova Biomed. Corp. v. Moller, 629 F.2d 190, 195 (1st Cir. 1980)

---

[1] The application of Federal Circuit law extends to Measurement's antitrust claim as well as its claims regarding the invalidity, unenforceability, and non-infringement of the Patents. Measurement's antitrust claim -- which is apparently based on General Patent's assertion of allegedly unenforceable patents, see Compl. ¶ 24 (citing Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172 (1965)) -- goes "hand-in-hand" with its claim of unenforceability. See 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998). Under these circumstances, the Federal Circuit has established that its precedents govern the personal jurisdiction analysis for all claims. See id. at 1378 (applying Federal Circuit precedent to claims for trade libel and unfair competition where such claims were closely related to the plaintiff's claim for patent infringement).

(finding, under analogous circumstances, that a mailed notice of infringement satisfied the statutory prerequisite). Because the Massachusetts long-arm statute extends personal jurisdiction to the limits of due process once a statutory basis for jurisdiction has been established, Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979), the remainder of the Court's analysis focuses on the second inquiry: whether an exercise of personal jurisdiction would offend due process. See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998).

To determine whether the assertion of personal jurisdiction would violate due process, the Court first considers whether (1) General Patent purposefully directed its activities at residents of Massachusetts, and (2) the claim arises out of or relates to those activities. Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (quoting Burger King, 471 U.S. at 472). On these two conditions, Measurement bears the burden of making a "prima facie showing that defendants are subject to personal jurisdiction." Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (stating that a prima facie showing is adequate in the absence of an evidentiary hearing on jurisdiction). Upon this showing, the Court makes an additional inquiry to determine whether, in light of other factors, an assertion of jurisdiction would be reasonable and fair. On this third condition, General Patent bears the burden of "present[ing] a compelling case that

jurisdiction would be constitutionally unreasonable." See Akro, 45 F.3d at 1546 (citing Burger King, 471 U.S. at 476-77).

The Court considers the aspects of the due process inquiry in turn.

A. "Purposefully directed"

The Federal Circuit has held, and Measurement concedes, that the mere sending of cease-and-desist letters, without more, is insufficient to satisfy the due process requirements for personal jurisdiction. See Red Wing, 148 F.3d at 1361 ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement."); Pl.'s Opp'n at 9. The something "more" identified by Measurement is General Patent's "negotiation and granting of licenses under the patents in suit to two companies located in Massachusetts." Pl.'s Opp'n at 11.

In response, General Patent cites decisions of the Federal Circuit and this Court rejecting the suggestion that receiving royalties from instate licensees can constitute purposefully directed activity. See Defs.' Reply [Doc. No. 12] at 15 (citing Red Wing, 148 F.3d at 1361, and Boston Scientific Corp. v. Bonzel, 132 F. Supp. 2d 45, 50 (D. Mass. 2001)). In Red Wing, however, none of the licensees in question resided in the forum state; they merely conducted business there. Red Wing, 148 F.3d at 1361. The business of the defendant's licensees in the forum

8

state therefore amounted to "unilateral activity . . . not attributable to the defendant." Id. (quoting Burger King, 471 U.S. at 475 & n.17) (internal quotation marks omitted). The decision in Boston Scientific resulted from a similar evaluation of voluntariness. See Boston Scientific, 132 F. Supp. 2d at 51. There, the instate licensee was "naught but the new parent company of the original [out-of-state] licensee." Id. at 50. Under those circumstances, the Court concluded that the decisions to purchase the original licensee and make royalty payments out of the forum state were "unilateral acts; Bonzel could not foresee and did not initiate these contacts with Massachusetts." Id. at 51.

Unlike the licensees in Red Wing, the licensees at issue here are not merely conducting business in Massachusetts; rather they are "Massachusetts companies." Pl.'s Opp'n at 10-11. Specifically, Measurement notes that Zoom Telephonics is headquartered in South Boston, and Softing North America, Inc. is headquartered in Newburyport. Id. at 10; see also Decl. of Alexander Poltorak [Doc. No. 7], Ex. 4 (Letter from Marchese to Evansen of 9/21/99, at 1) (listing Zoom Telephonics among the "companies with whom [General Patent] has settled litigation and/or executed licensing agreements"); Decl. of Michael R. Reinemann, Ex. 4 (General Patent News Release of 3/6/03) (listing "Softing North America, Inc. of Massachusetts" among "[o]ther companies that have recently licensed the Acticon patents"). In

9

addition, unlike the licensees in <u>Boston Scientific</u>, Zoom Telephonics and Softing North America appear to be original licensees. Accordingly, General Patent's communication and negotiation with these companies constitute purposeful contacts with Massachusetts. See <u>Cognex Corp.</u> v. <u>Lemelson Med. Educ. & Research Found., L.P.</u>, 67 F. Supp. 2d 5, 9 (D. Mass. 1999) (Gorton, J.) ("In the instant case, unlike in <u>Red Wing</u>, it is clear that Lemelson's non-exclusive licensing agreements with Massachusetts companies constitute contacts with the forum.").

B. **"Arises out of or relates to"**

Neither the Supreme Court nor the Federal Circuit has made "general pronouncements on the nexus required to satisfy this 'arise out of or relate to' prong of the due process inquiry." See <u>Akro</u>, 45 F.3d at 1547 (citing as cases in which the Supreme Court has declined to reach the issue <u>Carnival Cruise Lines</u> v. <u>Shute</u>, 499 U.S. 585, 589 (1991), and <u>Helicopteros Nacionales de Colombia</u> v. <u>Hall</u>, 466 U.S. 408, 415 n.10 (1984)). The Court accordingly proceeds with reference to the more specific "guideposts" provided by the circumstances of prior decisions. See <u>id.</u>

Measurement relies first on <u>Akro</u>. Pl's Opp'n at 9. There, the Federal Circuit determined that the plaintiff's declaratory judgment action related to "the patentee's exclusive licensing of one of the accused infringer's competitors within the forum

10

state." Akro, 45 F.3d at 1548. Measurement contends that here, as in Akro, it has established "the presence of a licensee in the forum." Id. Yet, as emphasized by subsequent interpretations of Akro, the circumstances of that decision are properly distinguishable from those presented here.

The Federal Circuit has subsequently interpreted Akro to focus on the obligations created by the exclusive license:

> This court emphasized the exclusive nature of the license, stating that "the exclusivity of [the] license agreement . . . created continuing obligations" between the patentee and the forum and "eliminated any possibility of [the patentee's] entering into any type of licensing arrangement" with the declaratory judgment plaintiff.

Red Wing, 148 F.3d at 1362 (quoting Akro, 45 F.3d at 1546) (alterations in original). Consistent with the Federal Circuit's interpretation, Judge Gorton of this District has construed the "continuing obligations" imposed by Akro's exclusive license to be "critical to the relatedness element of the personal jurisdiction analysis." Cognex, 67 F. Supp. 2d at 9. Because the exclusive license agreement in Akro required the patentee to "defend and pursue any infringement," Akro, 45 F.3d at 1549, the cease-and-desist letters were prompted at least in part by the agreement. See Cognex, 67 F. Supp. 2d at 9. Here, Measurement has identified no such obligations that would establish a relationship between General Patent's licensing agreements with Massachusetts companies and its communications with Measurement. See id. (concluding that the defendant's licenses, which, like

11

the licenses here, did not impose obligations to prosecute infringement, had only a *de minimis* connection with the infringement notices sent to the plaintiff).

In addition to Akro, Measurement cites this Court's decision in GSI Lumonics, Inc. v. BioDiscovery, Inc., 112 F. Supp. 2d 99 (D. Mass. 2000). Measurement asserts that GSI Lumonics, which based personal jurisdiction on cease-and-desist letters coupled with "other licensing and distribution agreements in Massachusetts," is "directly on point." Pl.'s Opp'n at 10. In GSI Lumonics, however, the Court characterized the defendant's licensing and distribution agreements as "significant," and the defendant's business activities in Massachusetts as "extensive and direct." GSI Lumonics, 112 F. Supp. 2d at 111. Indeed, the Court deemed the situation to be "exactly the type . . . envisioned by the First Circuit in Nova." Id. In Nova, the First Circuit described the defendant's forum-related business as "substantial," and noted that under these circumstances, "the fact that a controversy is unrelated to the defendant's activity is not necessarily fatal to the existence of jurisdiction." Nova, 629 F.2d at 193 n.3; see also Akro, 45 F.3d at 1548 (explaining that the First Circuit in Nova found the defendant's contacts to be "extensive and ongoing," and therefore "did not . . . reach the question whether the declaratory judgment action can be said to 'arise from' Moller's principal contacts with the

12

forum" (quoting Nova, 629 F.3d at 193 & n.3)). Thus, because both GSI Lumonics and Nova concerned "substantial" contacts not alleged here, neither proves as directly on point as Measurement contends.

The Court also notes that the plaintiff's claim of non-infringement in GSI Lumonics was "very closely related" to the defendant's agreements. GSI Lumonics, 112 F. Supp. 2d at 111. In fact, the plaintiff was a party to the other agreements, under which it served as the defendant's "very own distributor." Id. Moreover, the defendant had implicitly acknowledged the close relationship between the infringement controversy and the prior agreements, "blend[ing] accusations of copyright infringement with accusations of violating agreements between the parties." Id. No such relationship has been demonstrated between Measurement's present claims and the other licensing agreements, neither of which involves Measurement as a party.

The Court concludes that Measurement has failed to establish that General Patent's contacts, however purposefully directed toward Massachusetts, are sufficiently related to the present claims to support an exercise of personal jurisdiction. Because the Court thus finds personal jurisdiction lacking, it does not address General Patent's additional grounds for dismissal.

III. CONCLUSION

FEB-17-2004 12:04PM   FROM-LAWYERS WEEKLY   +6174617323   T-251   P.013   F-263

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. No. 5] is ALLOWED.

SO ORDERED.

/s/ William G. Young
_____
WILLIAM G. YOUNG
CHIEF JUDGE

14