IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | | |
|---|---|---|
| SOLMETEX, INC. | ) | Civil Action No.: 04-CV-40024-NMG |
| | ) | |
| Plaintiff, | ) | Judge: Gorton |
| | ) | |
| v. | ) | |
| | ) | |
| MAXIMUM SEPARATION | ) | |
| SYSTEMS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF SOLMETEX, INC.'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION AND IMPROPER SERVICE**

I.    **INTRODUCTION**

Defendant Maximum Separation Systems, Inc. ("Maximum Separation")[1], has moved to dismiss the instant case on grounds that this Court should not exercise personal jurisdiction over it under Fed. Rule 4(k)(2) and that service was improper. Maximum Separation's argument is that it does not have sufficient contacts with Massachusetts for this Court to exercise personal jurisdiction. Maximum Separation's argument is misplaced, and irrelevant, because under Rule 4(k)(2) SolmeteX need not show that Maximum Separation has sufficient contacts with Massachusetts. Rather, under Rule 4(k)(2), this Court may exercise personal jurisdiction over an alien corporation doing business in the United States, such as

---

[1] Maximum Separation admits that it is the owner of the patent in suit (Bryant Decl., at ¶ 5) but states in a footnote that although the patent in suit was assigned by Chilibeck to Maximum Separation, the assignment had not yet been recorded with the United States Patent and Trademark Office. This observation is irrelevant since recording is not a prerequisite to ownership. The recording statute, 35 U.S.C. § 261, exists only to protect the assignee from subsequent bona fide purchasers without notice. *GAIA Tech, Inc. v. Reconversion Tech., Inc.*, 93 F.3d 774 (Fed. Cir. 1996).

1

Maximum Separation, if the alien corporation cannot demonstrate that it has sufficient contacts for any court to exercise constitutionally personal jurisdiction over it. Otherwise, the alien corporation would be free to engage in business in the United States and yet evade suit here. Thus, Rule 4(k)(2) requires Maximum Separation to produce evidence of contacts with a forum in the United States sufficient to demonstrate that it is subject to personal jurisdiction there; otherwise, it is subject to suit in the forum selected by SolmeteX, which, of course, is this Court. Because Maximum Separation lacks sufficient contacts with any forum, has no registration or license to do business in any state, no agent for service of process, and no temporary or permanent employees, representatives, offices, warehouses, inventory, sales records, bank accounts, telephone listings, or significant sales activity or advertising in any state, Maximum Separation cannot demonstrate that it is subject to personal jurisdiction in any court. Therefore, under Rule 4(k)(2), Maximum Separation is subject to suit in this forum, as selected by SolmeteX.

Regardless, the instant case should proceed under 28 U.S.C. § 1404(a) because the sources of proof, including witnesses and documents, for the critical issues of infringement, damages, and invalidity are located in Massachusetts.[2] In such circumstances, it is irrelevant that Maximum Separation is also subject to this Court's jurisdiction under Rule 4(k)(2).

Maximum Separation's alternative argument that service was improper is of no moment. The time limitation for service upon Maximum Separation has not expired and service is currently being effected through the strictures of the Hague Convention.

---

[2] SolmeteX has filed in the District Court in Washington a motion to stay or transfer the action filed by defendant pursuant to 28 U.S.C. § 1404(a). Maximum Separation notes that the Court in Washington has already issued two orders. What Maximum Separation does not tell this Court is that those orders were simply "form" orders issued on filing of any civil action.

2

## II. BACKGROUND

### A. The Subject Of The Parties' Dispute

On December 12, 2003, Maximum Separation threatened SolmeteX with infringement of the claims of United States Patent Application No. 09/908,682, once it issued from the United States Patent and Trademark Office. United States Patent Application No. 09/908,682 matured into United States Letters Patent No. 6,692,636 ("the '636 patent"). On February 17, 2004, the day the '636 patent issued, SolmeteX filed the instant suit against Maximum Separation. SolmeteX asserts that the '636 patent is invalid and void, and seeks a declaration that neither SolmeteX nor any of its customers or licensees infringes the '636 patent. Later that same day, Maximum Separation filed suit in Washington state alleging infringement by SolmeteX of the '636 patent. The '636 patent is directed generally toward dental amalgam separators for removing dental amalgam and other particles from dental-office liquid effluent.

Pending before the United States District Court for the District of Washington is SolmeteX's Motion to Stay or Transfer Venue Pursuant to 28 U.S.C. § 1404(a). The Washington action will almost certainly be transferred to this Court for consolidation with this previously filed, and identical, lawsuit, because SolmeteX was the "first-to-file." In addition, neither party to this litigation has any significant relationship with Washington, nor do they engage in any significant business activity with Washington related to Maximum Separation's suit in Washington. Rather, the center of the accused infringing activity occurred at SolmeteX's principal place of business only a few miles from Worcester, Massachusetts. Further, the sources of proof, including the documents and witnesses, for the critical issues of infringement, damages, and invalidity are located in Massachusetts, and, more particularly, the Worcester Division.

3

B.   **SolmeteX's Business**

SolmeteX is a Delaware corporation having its principal place of business in Northborough, Massachusetts, which is located a few miles from Worcester, Massachusetts and within the jurisdiction of the United States District Court for the District of Massachusetts, Worcester Division. (Affidavit of Nicholas J. Mozzicato, at ¶¶ 2, 3, hereinafter "Mozzicato Aff., at ¶ 2", attached hereto as Exhibit A.) From its headquarters in Massachusetts, SolmeteX manages all aspects of its dental amalgam separators business. This includes development and manufacture of specialized technology for the safe and economic removal of heavy metal contaminants. In particular, SolmeteX designs and manufactures its dental amalgam separators at its corporate headquarters in Massachusetts. SolmeteX also sells and distributes dental amalgam separators from Massachusetts. Accounting, marketing, and customer service activities also take place there. Mozzicato Aff., at ¶ 5; Affidavit of Owen E. Boyd, at ¶ 5, attached hereto as Exhibit B. Thus, the conduct complained of by Maximum Separation as constituting acts of infringement takes place in Massachusetts, and more particularly in the District of Massachusetts, Worcester Division.

As one would anticipate, the documents related to SolmeteX's dental amalgam separators are located at SolmeteX's principal place of business in Massachusetts. (Affidavit of Ted Shields, at ¶ 5, attached hereto as Exhibit C.) In addition, all of SolmeteX's documents related to the design, manufacture, and use of dental amalgam separators are located there. Shields Aff., at ¶ 5. <u>None</u> are located in Washington. Shields Aff., at ¶ 5. All of SolmeteX's financial data relating to the marketing and sale of its dental amalgam separators are located in Massachusetts. <u>None</u> are located in Washington. Mozzicato Aff., at ¶ 6.

SolmeteX does not maintain a single office, employee, or representative in Washington. (Affidavit of Tony MacDonald, at ¶ 5, attached hereto as Exhibit D.) Furthermore, SolmeteX does not design or manufacture dental amalgam separators in Washington. MacDonald Aff., at ¶ 5. Further, while SolmeteX has sold allegedly infringing products in Washington, in 2003 those sales only accounted for approximately 2.8% of SolmeteX's total unit sales of the allegedly infringing products and approximately 6.0% of SolmeteX's United States unit sales. MacDonald Aff., at ¶ 7.

### C.   Maximum Separation's Business

Maximum Separation is a Canadian corporation engaged in the manufacture, sale, and distribution of dental amalgam separators. Its headquarters and principal place of business is located in British Columbia, Canada. According to Maximum Separation's website, it does not have an office in Washington, or anywhere in the United States. (*See* Exhibit E.)

To SolmeteX's knowledge, Maximum Separation has no significant contact with the state of Washington other than the possibility of a few sales. (Bryant Declaration filed with Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, at ¶ 8, "approximately 30 separator units [sold] in the state of Washington.") Maximum Separation has offered no evidence that it maintains any employees, offices, or property in Washington. It has also offered no evidence demonstrating that it maintains any bank accounts, telephone listings, or agents in the state of Washington. Notably, Maximum Separation is not licensed to do business in Washington.

Thus, the evidence before the Court suggests that Maximum Separation has not engaged in any continuous or systematic business activity in Washington or anywhere else in the

United States. Indeed, Maximum Separation admits in its Motion to Dismiss that it is a newly formed company that has not made significant inroads in the United States. (Bryant Decl., at ¶ 8). This is reinforced by Maximum Separation's failure to offer any details of its paltry gross revenue derived from products sold in Washington or to provide a shred of detail of its claimed advertisement activity. Based on the approximately thirty sales Maximum Separation alleges it has made in Washington, it can be fairly estimated that it has only sold a few thousand dollars worth of product there.

### III.   ARGUMENT

#### A.   The Law Regarding This Court's Exercise Of Personal Jurisdiction Over Maximum Separation Under Rule 4(k)(2)

Rule 4(k)(2) of the Federal Rules of Civil Procedure provides:

> If the exercise of jurisdiction is consistent with the Constitution and the laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Under Rule 4(k)(2), this Court may exercise personal jurisdiction over Maximum Separation if Maximum Separation does not have sufficient contacts for a court to exercise constitutionally personal jurisdiction over it. *See* Special Note, 1993 Amendments to Rule 4(k)(2). Thus, Maximum Separation bears the burden of producing evidence demonstrating that it is subject to personal jurisdiction in a particular state. *United States v. Swiss Am. Bank Ltd.*, 191 F. 3d 30, 42 (1st Cir. 1999). Because Maximum Separation claims it has sufficient contacts only with Washington, it makes no difference under Rule 4(k)(2) whether Maximum Separation

has sufficient contacts with Massachusetts.[3] What is relevant is that Maximum Separation has failed to demonstrate that it has sufficient contacts with Washington for it to be subject to personal jurisdiction there, as described in more detail below. Because Maximum Separation does not have sufficient contacts with Washington, pursuant to Rule 4(k)(2) it is subject to suit in this Court, the forum selected by SolmeteX.

### B.    Maximum Separation Does Not Have Sufficient Contacts With Washington

Under the due process clause, the United States District Court for the District of Washington can assert personal jurisdiction over Maximum Separation only if it has a level of "minimum contacts" with Washington such that "traditional notions of fair play and substantial justice" are not offended. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Cognigen Networks, Inc. v. Cognigen Corp.*, 174 F. Supp. 2d 1134, 1137 (W.D. Wa. 2001). Maximum Separation does not assert that the Washington Court has *specific* jurisdiction over it. Indeed, the instant case arises from allegedly infringing activities of *SolmeteX*, not Maximum Separation. In addition, the only activity of Maximum Separation that it could argue gave rise to the instant action is a cease and desist letter Maximum Separation directed to SolmeteX in Massachusetts, not Washington.

To establish that the Washington Court can exercise *general* jurisdiction over Maximum Separation, Maximum Separation must demonstrate that it has engaged in continuous and systematic business there. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S. Ct. 868, 872-73 (1984); *Cognigen*, 174 F. Supp. 2d at 1137. Further, in order for general jurisdiction to lie, Maximum Separation must have a substantial amount of contacts with

---

[3] Because Maximum Separation has alleged that it has sufficient contacts only with Washington, Maximum Separation has waived any claim that it has sufficient contacts with any other forum. *Id.* at 42.

Washington. 4 Wright and Miller, *Federal Practice and Procedure* § 1067, at p. 298 (1987). In the Ninth Circuit, in which Washington is located, a company's lack of a regular place of business in the forum state is significant and weighs strongly against exercising personal jurisdiction. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)("[The defendant's] lack of a regular place of business in Washington is significant, and is not overcome by a few visits.") Further, Maximum Separation must show that it has continuous and systematic contacts that "approximate physical presence." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002); citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

According to the Bryant Declaration filed by Maximum Separation, Maximum Separation has no significant contact with the state of Washington. Indeed, Maximum Separation has offered no evidence that it maintains any temporary or permanent employees, representatives, offices, warehouses, inventory, sales records, bank accounts, telephone listings, or significant sales activity or advertising. Notably, Maximum Separation is not licensed to do business in Washington, nor does it maintain an agent for service of process there or any regular place of business. Further, Maximum Separation has not claimed that it has continuous and systematic contacts that "approximate physical presence" in Washington.

The Ninth Circuit has declined to exercise general jurisdiction over a foreign company under similar circumstances. In *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir. 2002), the Ninth Circuit affirmed the district court's refusal to exercise general jurisdiction over a defendant despite approximately sixteen shipments of products into the forum and "considerable" business there. *Id.* at 1124. These sales in the forum occurred over the course of one year. *Id.* at 1125. The Ninth Circuit's decision rested on

the fact that there was no evidence that the defendant owned property, kept bank accounts, had employees, or designated an agent for service of process in the forum. *Id.* Based on these facts, the Ninth Circuit declared that the defendant had not engaged in activity that "approximates physical presence." *Id.* at 1125.

Other federal district courts have declined to exercise general jurisdiction over a foreign company even in circumstances where the company has more extensive contacts with the forum than does Maximum Separation with Washington. For example, in *Conti v. Pneumatic Products Corp.*, 977 F.2d 978 (6th Cir. 1992), the Sixth Circuit looked at the following facts and determined that the defendant's contacts with Ohio did not subject it to the general jurisdiction of the state's court system:

> [Defendant] is not licensed to do business in Ohio, does not maintain an office or employees in Ohio, and does own any property in Ohio. [Defendant] sells its products all over the United States. Sales are made either to distributors for resale or directly by [defendant] to the end user. [Defendant] sells its products in Ohio through two distributors. These distributors act as [defendant's] agents in connection with [defendant's] direct sales to end users; and, they regularly purchase [defendant's] products for resale in Ohio. The annual sales of one of these distributors to Ohio customers total approximately $900,000. The distributors themselves usually service the products they sell. On occasion, they are visited and telephone by [defendant's] employees for technical support.

*Id.* at 981. Despite almost one million dollars in sales annually and regular visits by the defendant to the forum state, the Sixth Circuit affirmed the district court's refusal to exercise general jurisdiction over the defendant in *Conti*. In contrast, the Federal Circuit recently declared that millions of dollars of sales and a broad distributorship network in the forum state would be required for a court to exercise general jurisdiction over a defendant. *See LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

In the instant case, as the defendant in *Conti*, Maximum Separation is not licensed to do business in Washington. It does not maintain an office or employees in Washington, and it has not asserted that it owns or rents property there. Maximum Separation has also failed to demonstrate any significant sales figures from business activities in Washington. In this regard, it must be noted that almost one million dollars in annual sales in *Conti* was insufficient for a court to exercise general jurisdiction. Finally, Maximum Separation admits that it is a "newly formed company and has not made significant inroads in the United States." (Bryant Decl., at ¶ 8). Thus, it cannot be deemed to have engaged in "continuous" business activity in Washington over any extended length of time.

Maximum Separation's reliance on *Measurement Computing Corp. v. General Patent Corp.*, No. 03-11047 (D.Mass. Feb. 10, 2004), is similarly misplaced. That case involved a venue dispute between two domestic corporations under Massachusetts' long-arm statute, and not Rule 4(k)(2). It is thus not "factually similar" at all, as Maximum Separation suggests. (*See* Defendant's Memorandum In Support of Its Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service, p. 4.)

### C.   This Case Should Proceed Under 28 U.S.C. § 1404(a)

The operation of 28 U.S.C. § 1404(a) is not affected by Rule 4(k)(2):

> This provision does not affect…the operation of federal law providing for the change of venue. 28 U.S.C. §§ 1404, 1406. The availability of transfer for fairness and convenience under § 1404 should preclude most conflicts between the full exercise of territorial jurisdiction permitted by this rule and the Fifth Amendment requirement of 'fair play and substantial justice.'

*See* Special Note, 1993 Amendments to Rule 4(k)(2).  Therefore, if it is appropriate under 28 U.S.C. § 1404(a) for the instant case to proceed, it is irrelevant that Maximum Separation is also subject to the exercise of personal jurisdiction by this Court under Rule 4(k)(2).

As noted above, currently pending before the United States District Court for the District of Washington is SolmeteX's Motion to Stay or Transfer Venue Pursuant to 28 U.S.C. § 1404(a). (*See* SolmeteX's Motion and Memorandum, attached hereto as Exhibit F.)  For the convenience of the Court, SolmeteX incorporates by reference the arguments made in its Motion to Stay or Transfer Venue Pursuant to 28 U.S.C. § 1404(a).  Simply put, this case involves a Canadian company suing a Massachusetts-based company in the state of Washington. The Washington action will almost certainly be transferred to this Court for consolidation with this previously filed, and identical, lawsuit, because SolmeteX was the "first-to-file."  In addition, neither party to this litigation has any significant relationship with Washington, nor do they engage in any significant business activity with Washington related to Maximum Separation's suit in Washington.  Rather, the center of the accused infringing activity occurred at SolmeteX's principal place of business only a few miles from Worcester, Massachusetts.  Further, the sources of proof, including the documents and witnesses, for the critical issues of infringement, damages, and invalidity are located at SolmeteX's headquarters in Massachusetts, and, more particularly, the Worcester Division.

### D.   Maximum Separation's Argument That Service Was Improper Is Meritless

Because Maximum Separation is a Canadian company, service of process can be effected through the Hague Convention. *See* Fed. R. Civ. P. 4(h), incorporating Rule 4(f). SolmeteX is presently undertaking to serve Maximum Separation through the Hague

11

Convention. SolmeteX's undertaking to serve Maximum Separation through the Hague Convention, which requires coordination with the Central Authority of British Columbia, must be taken in view of the fact that SolmeteX's Complaint was just filed on February 17, 2004, less than 30 days ago. Assuming Maximum Separation was a domestic corporation, SolmeteX would have 120 days to serve the Complaint. *See* Fed. R. Civ. P. 4(m). However, SolmeteX is not even constrained by the 120-day time limit of Rule 4(m), because that time limit does not apply to service upon a foreign company pursuant to Rule 4(f), as is being undertaking by SolmeteX to serve Maximum Separation. *Id.* Therefore, Maximum Separation's request for dismissal based upon improper service should be denied. In the alternative, SolmeteX requests leave to complete service on Maximum Separation.

## IV.   CONCLUSION

For the foregoing reasons, plaintiff SolmeteX, Inc., requests that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service be denied.

Respectfully submitted,

SOLMETEX, INC.

Dated: 17 March 2004

By: /s/ Kurt S. Kusiak
Jonathan W. Fitch (168510)
jwf@sally-fitch.com
Kurt S. Kusiak (559254)
ksk@sally-fitch.com
Trial Attorneys for Plaintiff
Sally & Fitch
225 Franklin Street, 30th Floor
Boston, Massachusetts 02110-2804
Telephone: (617) 542-5542
Facsimile:  (617) 542-1542

Of Counsel:
J. Robert Chambers  (Ohio Reg. No. 0003942)
Bchambers@whepatent.com
Brett A. Schatz (Ohio Reg. No. 0072038)
Bschatz@whepatent.com
WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower, 441 Vine Street
Cincinnati, Ohio 45202
Telephone:  (513) 241-2324
Facsimile:   (513) 241-6234
Attorneys for Plaintiff

K:\SXI\12\SolmeteX Opposition Motion to Dismiss.doc

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: John M. Skenyon, counsel for Maximum Separation Systems, Inc., and I herby certify that I have mailed by United States Postal Service the document to the following non CM-ECF participants: Jennifer L. Jolley and Rex B. Stratton, counsel for Maximum Separation Systems, Inc., Stratton Ballew, Suite 1313, 1218 Third Avenue, Seattle, Washington 98101.

_/s/ Kurt S. Kusiak_
Kurt S. Kusiak